This case was initially heard in part before the Deputy Commissioner in Durham on July 21, 1993. Following the initial hearing, the record remained open for the parties to produce necessary medical evidence. Thereafter, the parties agreed to stipulate medical and vocational reports in lieu of depositions, and the following were received into the record:
 a. 2 pages of medical records of August 2, 1993 from Dr. Craig Derian;
 b. 4 pages of vocational records of Thomas S. Baldwin, Ph.D., plus the 9 page resume; and
 c. 2 pages of vocational records from Richard Cowan.
The counsel for plaintiff submitted written contentions on December 9, 1993, with counsel for defendants' contentions being filed on December 13, 1993. Plaintiff's counsel then requested that she be permitted additional time to submit contentions to address the issue of the I.C. Form 26. This request was allowed, and counsel's Reply and Motion to Defendants' Contentions were filed on December 23, 1993. By this motion, counsel for the plaintiff seeks to set aside the Form 26 Agreement which was entered into by the parties and was approved by the Industrial Commission. On January 4, 1994, counsel for defendants filed his response to plaintiff's motions.
For reasons stated in this Opinion and Award, this Motion is HEREBY DENIED and the approval of the Form 26 STANDS.
* * * * * * * * * *
The undersigned have reviewed the Award based upon the record of the proceedings before the Deputy Commissioner.
The appealing party has shown good grounds to reconsider the evidence. Upon reconsideration of the evidence, the undersigned are of the opinion that the Deputy Commissioner erred in her findings of fact as to omissions regarding whether plaintiff sustained a change of condition, regarding plaintiff's wage-earning capacity and regarding the circumstances of the execution of the Form 26 Agreement. Accordingly, the Opinion and Award of March 17, 1994, is HEREBY VACATED, and the undersigned proceed to make their own Findings of Fact, Conclusions of Law, and Ultimate Award.
* * * * * * * * * * *
The undersigned find as facts and conclude as matters of law the following which were entered into by the parties at the hearing as
STIPULATIONS
1. At the time of the injury giving rise to this claim, the parties were subject to and bound by the provisions of the Workers' Compensation Act, and the employer-employee relationship existed between the parties.
2. The plaintiff's average weekly wage was $312.48, which yields a compensation rate of $208.32.
3. The plaintiff was born on March 14, 1930 and completed through the eighth grade. She worked for the Durham City Schools as a food service worker for fourteen years prior to her injury.
4. The plaintiff suffered a compensable injury on January 19, 1990, for which she was out of work from February 8, 1990 through October 15, 1990, and from January 1, 1991 through May 11, 1992. Beginning on October 15, 1990 through December 31, 1990, she returned to work as a cashier for four hours per day at Rogers Herr Junior High School. From May 11, 1992 through June 5, 1992, she worked as a cashier at Hillside High School for two hours per day. She has been out of work since June 6, 1992.
5. The parties executed an I.C. Form 21 Agreement for Compensation, which was approved by the Commission on April 3, 1990, whereby the plaintiff was paid temporary total disability beginning February 15, 1990 at a weekly compensation rate of $208.32. Pursuant to the Form 21, the plaintiff was paid $16,985.92 in temporary total disability benefits. Medical expenses in the amount of $18,067.87 were paid.
6. On June 6, 1991, the plaintiff reached maximum medical improvement and was rated as having a thirty percent (30%) permanent partial disability to the back. On November 13, 1991, an I.C. Form 26 was approved by the Commission, pursuant to which the plaintiff was paid $14,680.14 for permanent partial disability compensation.
7. The parties agreed to stipulate into the record a notebook of medical and vocational reports, and the following were received:
a. 6 pages from Dr. Sampson E. Harrell;
b. 35 pages from Dr. Paul H. Wright;
c. 16 pages from Dr. Craig Derian;
d. 11 pages from Durham Regional Hospital; and
e. 51 pages from Intracorp Records.
8. The parties agree that the contested issue is whether the plaintiff is entitled to permanent and total disability under N.C. Gen. Stat. § 97-29, as a result of the compensable injury which occurred on January 19, 1990.
* * * * * * * * * * *
Based upon all of the competent and convincing evidence adduced at the hearing and through stipulation, the undersigned make the following
FINDINGS OF FACT
1. On January 19, 1990, the plaintiff sustained a compensable injury when she entered a walk-in freezer at R.N. Harris School to get a box of sausage for breakfast the following morning. The box was on the top shelf, and when the plaintiff removed the box, many other boxes of frozen foods fell from the upper shelf and struck the plaintiff on her right side and back. The plaintiff felt an immediate onset of pain in her neck, back and rib cage.
2. The plaintiff was initially treated by the family doctor, Dr. Sampson E. Harrell, who subsequently referred her to Dr. Paul H. Wright, an orthopedist. On February 22, 1990, Dr. Wright diagnosed the plaintiff as having a fractured right eleventh rib with a back sprain and strain. The plaintiff continued in treatment with Dr. Wright through January 2, 1991, when plaintiff was referred to Dr. T. Craig Derian.
3. From October 15, 1990 through December 31, 1990, Dr. Wright authorized the plaintiff to return to work for four hours per day, working as the cafeteria cashier. Each morning, the plaintiff attended physical therapy sessions. However, the plaintiff was taken out of work by Dr. Wright shortly after Christmas, and was referred to Dr. Derian.
4. Dr. Derian saw the plaintiff on February 20, 1991, and has continued plaintiff under his care since that time. Following an MRI and discogram, Dr. Derian diagnosed the plaintiff as having multiple level degenerative disc disease and spinal stenosis at L3-4 and L4-5, central and lateral with probable neurogenic back pain.
5. On June 6, 1991, the plaintiff reached maximum medical improvement and was rated by Dr. Derian as having a thirty percent (30%) permanent partial disability to her back due to the work-related injury. Dr. Derian stated at that time that the plaintiff could possibly perform sedentary work activities, and that she should lift no greater than 10-15 pounds on an occasional basis. Dr. Derian further advised that she should avoid repetitive bending stooping, lifting, twisting, bending at the waist, and that it is impossible for the plaintiff to work on a full-time basis despite these restrictions. Dr. Derian released the plaintiff to sedentary work in April of 1992 and in particular, approved the cashier job offered by defendant-employer. He also encouraged plaintiff to remain as active as possible in his March 9, 1992 note.
6. During this time, the plaintiff received vocational counseling from Intercorp. From May 11, 1992 through June 5, 1992, the plaintiff was able to return to work at Durham High School, where she worked two hours and thirty minutes per day as a cashier. She would have been willing to work longer if the job had been offered.
7. Apparently plaintiff was not called back to work in the Summer of 1992 because of confusion resulting from the merger of the county and city school systems. She made three calls to the personnel department regarding possibly returning but did not present herself in person for employment even though she had always returned in person for her employment each fall for the previous years she was employed with the school system. During 1992, the Durham City and County school systems merged, and in August, when the school system sent out the form letter to persons interested in working, the rosters from both systems were merged. Some employees from the prior school year did not get their form letters; however, it was generally the policy that the letters went out at the first of August and that those individuals who did not receive their letters should call into the personnel office to express their interest in returning to work.
8. Plaintiff did not look for any other type of employment or make any reasonable type of job search after June of 1992 even though she was capable of gainful employment with the school system.
9. The plaintiff formally retired from the Durham School System in June of 1993.
10. The plaintiff declined to have any surgery for her condition, as the doctors could not guarantee the relative success of the procedure.
11. There is insufficient convincing evidence of record that plaintiff remains totally disabled or incapable of earning any wages. Physician opinion supports this determination. She has been capable of working in a limited capacity but has not been able to earn the same wages as before the injury.
12. Plaintiff, while represented by counsel, entered into a Form 26 Agreement for payment of compensation for the 30 percent permanent partial disability of her back and thus made her election to receive benefits under G.S. 97-31 in lieu of 97-29 or97-30 benefits despite her limited earning capacity. This Form 26 was approved by the Industrial Commission on November 13, 1991.
Plaintiff did not move to set aside the Form 26 until after the hearing took place. She alleged that there were discussions between her attorney and the insurance adjuster regarding the fact that temporary total disability compensation would be continued upon signing the Form 26 and that the issue of temporary and partial disability would remain open. However, the Form 26 Agreement clearly stated the following "PPd = 30% Back — 90 wks. 90 x $208.32 = $18,748.80." There was no indication on the face of the approved agreement that these payments were intended to be a payment of permanent partial disability merely to serve as a credit while in the meantime rehabilitation efforts continued, and if unsuccessful, plaintiff could still apply for temporary total disability.
13. Plaintiff was represented by counsel at the time she and her attorney both signed the Form 26 Agreement. Plaintiff's counsel is presumed to be aware of the election of benefits which occurs when plaintiff agrees by Form 26 Agreement to accept a rating for scheduled benefits under G.S. 97-31.
While an unrepresented party may have been misled into believing that defendant would cut off payments if a Form 26 (rating election) was not signed or that the Form 26 was plaintiff's only option, it is impossible for the undersigned to believe that a plaintiff, when represented by a competent counsel, could become subject to fraud, misrepresentation or undue influence. Further, the undersigned, when determining the fairness of the Agreement, cannot help but feel that a competent attorney would not accept oral representations or promises directly contrary to the clear election of benefits stated on the form. There is further no indication of any mutual mistake of fact with regard to the Form 26, as defendants clearly stand behind their assertions as to the 30 percent rating being all the compensation to which plaintiff is entitled under the Act.
14. Although there are some indications that plaintiff's symptoms worsened after the Form 26 was approved, there is insufficient convincing evidence of record to indicate that plaintiff suffered a material change of condition which related back to her initial accident.
* * * * * * * * * * *
The foregoing stipulations and findings of fact engender the following
CONCLUSIONS OF LAW
1. The plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of her employment on January 19, 1990, for which she has been paid temporary total disability compensation under a Form 21 Agreement approved by the Commission on April 3, 1990.
2. The plaintiff reached maximum medical improvement on June 6, 1991, at which time she was rated as having a thirty percent (30%) permanent partial impairment to her back. The plaintiff was compensated for this via an I.C. Form 26, which was approved by the Commission on November 13, 1991. G.S. 97-31.
3. The plaintiff is entitled to no further temporary total disability compensation benefits by reason of the accident on January 19, 1990. G.S. 97-29; Moretz v. Richards Associates,316 N.C. 539, 342 S.E.2d 844 (1986).
4. The plaintiff was not rendered permanently and totally disabled within the meaning of the North Carolina Workers' Compensation Act as a result of the January 19, 1990 accident, and is not entitled to permanent and total disability compensation benefits provided for under the provisions of N.C. Gen Stat. § 97-29. G.S. 97-29.
5. A settlement agreement which has been approved by the Industrial Commission is as binding on the parties as an unappealed award of the Commission, and it cannot be set aside unless there was an error due to fraud, misrepresentation, undue influence or mutual mistake. G.S. 97-17; Pruitt v. KnightPublishing Company, 289 N.C. 254 (1976).
6. Plaintiff has not alleged facts which would give rise to grounds for which an approved settlement agreement could be set aside. Furthermore, her motion to reopen the case to offer further evidence on that issue was not timely and should be denied. G.S.97-17.
7. An employee who sustains permanent partial loss of earning capacity may elect between receiving benefits under G.S.97-30 or G.S. 97-31. In this case, plaintiff elected to receive benefits under G.S. 97-31 for her permanent partial impairment rating. G.S. 97-31; Gupton v. Builders Transport, 320 N.C. 38
(1987).
8. Plaintiff has not proven that she sustained a material change for the worse in the condition she suffered as a result of the injury giving rise to this claim. G.S. 97-47.
9. Plaintiff is entitled to such future medical expenses as are related to the January 19, 1990 incident and as may be required to reasonably effect a cure or give relief. 97-25
(before amendment).
* * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the undersigned enter the following
AWARD
1. Plaintiff's claim for additional compensation in the way of permanent and total disability is, and under the law must be DENIED.
2. Defendants shall pay such future medical expenses as are related to the compensable accident and as may be needed to effect a cure or give relief, once the medical bills for the same have been submitted through the carrier to the Industrial Commission and approved.
3. Each side shall bear its own costs.
IT IS FURTHER ORDERED:
1. Plaintiff's motion to reopen the case for addition evidence re whether the Form 26 Agreement should be set aside is hereby DENIED.
2. This case is REMOVED from the Full Commission docket.
This the __________ day of ______________________, 1995.
 S/ ___________________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ _______________________ MORGAN S. CHAPMAN DEPUTY COMMISSIONER
DISSENTING:
S/ _______________________ J. RANDOLPH WARD COMMISSIONER
JHB/nwm 02/01/95